19-2331 from the District of Nebraska, United States et al. v. Mark Ringland All right, Mr. McWilliams, we'll hear from you first. Yes, Your Honor, thank you. May it please the Court, Ms. Cerullo. Google searched the contents of Mark Ringland's email and photos, at first electronically and then for some of the files manually. Google then forwarded on over 1,200 files to the National Center for Missing and Exploited Children's Division. There, human analysts at the Exploited Children's Division then reviewed the files manually, added their notes, their leads, their assessments of the files, and then forwarded on the files to law enforcement with a report. Law enforcement then reviewed the files that Google had and used the contents of Google's tips and the National Center's assessments, included all that information in a search warrant application to review the contents of Mr. Ringland's emails. Over the course of the summer of 2017, Google escalated its involvement in the investigation of Mr. Ringland, linking certain accounts and ultimately forwarding, in this fashion, thousands of files from Mr. Ringland's accounts to, first, the National Center for Missing and Exploited Children, and ultimately law enforcement. This is a case about the warrantless search of Mr. Ringland's papers and effects, first by a government agent, Google, then by a government entity, the National Center for Missing and Exploited Children, and finally by the government itself. These searches violated Mr. Ringland's reasonable expectations of privacy and constituted a trespass to Mr. Ringland's constitutionally protected correspondence. The district court, having made no findings about Mr. Ringland's subjective or objective reasonable expectations of privacy, and having made no findings about the National Center for Missing and Exploited Children's expansion upon the searches made by Google, erred by denying Mr. Ringland's motion to suppress. This court should adopt the framework laid out by the Tenth Circuit in the United States v. Ackerman. Doing so would be consistent with its own precedent in the United States v. Stevenson and the Supreme Court's expanding jurisprudence regarding interplay between technology and the Fourth Amendment. Do you say that Stevenson has been superseded by any later Supreme Court decision, or do you think that's still good law as to whether Google is a government actor? I don't think that Stevenson has been superseded by any Supreme Court cases. However, there have been, right around the time of Stevenson, we had the Jones case, which laid out the first trespass to chattels theory of Fourth Amendment violation, which was not raised or addressed in Stevenson. Thereafter, we have the Carpenter… Sorry, go ahead. Why don't you finish making your points? I just wanted to get to whether Stevenson controls as to Google, or whether you have a proposed way to distinguish it or supersede it. I think maybe you're arguing that we should take up a chattels analysis that wasn't undertaken in Stevenson. I'm not sure if that's your point about the Jones case or not. No, the chattels argument is separate. The court can decide this case simply by distinguishing Google and Google's actions in this case from the way that America Online acted in the Stevenson case. The court in this court in Stevenson laid out several factors, two factors to be precise, that if they had been present in Stevenson, would have rendered it or subjected it to a government agency test. First, whether or not the government knew or acquiesced, and then secondly, escalating involvement by the electronic service provider here. Both of those cases are abundant. Those factors are abundant in this case. Here we're not talking about an isolated review of a handful of files and sending them on to the National Center. We have Google actively trying to aid law enforcement with a given exchange throughout the summer of 2017. Moreover, in this case, we have built a record in the defense exhibits laying out structurally how these electronic service providers work with law enforcement and the National Center, sharing their hash value repositories and have a shared goal of eliminating child pornography. So I think it's clear that... Can I break in on you for a second? Yes, sir. Is it true that all 1,200 plus files forwarded on to the Center met Google's hash match? The cyber tips that were introduced at the district court level indicated that of the first 1,216 files, Google only designated four of those as apparent child pornography. The remaining 1,212 were labeled for whatever reason as uncategorized. Yes, but I thought that... I don't know the district court's as clear as the district court could be and that's the reason I'm asking. They had to meet the hash match to begin with, right? No. Ms. McGough's declaration, which was submitted after the hearing as government exhibit number two, seems to suggest that we're only... Only files that have met the guarantee, that we've guaranteed that these are in fact child pornography will meet the hash value and then be forwarded on to the National Center. But the cyber tips, and indeed the record built in this case, suggests just the contrary, that there are hits, there is some manual review, but then that the files are forwarded en masse to the National Center, which conducts its own review, and then regardless of its findings, forwards them again en masse on to law enforcement. Okay, so back up one second to what the district and I think the United States magistrate judge said plainly. Google identified and reported 1,216 instances of suspected child pornography linked to Ringland's account. Don't you think that's enough to say they met the hash match? I don't believe so. And I don't mean to speak for the magistrate judge or the district court. Edward, go ahead. I think there's a differentiation between what Google suspected to be child pornography and whether or not the hash values had triggered their categorization of these files as apparent child pornography. Whether that matters for Fourth Amendment purposes or not, I don't really know. Except to say that in Ms. McGough's declaration, when she says, when we get a hit on a hash value for a previously reviewed, manually reviewed image, we classify that image as, quote, apparent child pornography. And in the cyber tips that were ultimately made to the National Center, the numbers are quite clear. They have four files that are classified as apparent child pornography and 1,212 that are not categorized. And that's in Defense Exhibit 101. So when the district court uses the word suspected child pornography, I suspect that they are not using that as interchangeable with Google's own designation as something being apparent child pornography, which is linked to the hash value match, for lack of a better term. Thank you. In conducting this review, two facts are clear. And these facts were not found by the district court sufficiently clear, but they are what make this case more analogous to Ackerman. And the first is that Google did not review manually, or to the extent that the National Center did, all of the files. And secondly, the National Center did review all of the files. To make it algebraic, Google reviewed X images. The National Center for Missing and Exploited Children reviewed X plus Y. The district court fixated on the fact that when these files ultimately arrived at law enforcement, the investigator with the state patrol only went back and reviewed that original X reviewed by Google, ignoring the argument from Ackerman made by Mr. Ringland at the district court that the expansion of the search by the National Center in and of itself constitutes a breach of the Fourth Amendment. But did Ackerman involve X or just the Y? I mean, in other words, if Google was a private actor and it searched 500 files and turned them over, and they eventually made their way to the people in Nebraska for the search warrant, isn't that abundant probable cause that is sufficient to support the warrant, even if the knick-knack searching happened and was impermissible? If Google had privately searched and directly forwarded to, cutting the National Center out of the equation, had contacted law enforcement and said, we have these images, we want you to take a look at them, then I think you have a radically different situation. I don't think that resolves the matter entirely, owing to the fact that I think that Google, in aiding law enforcement, acted as a government agent. But what you have with the National Center, statutorily, is this pseudo-government agency which is named as the National Clearinghouse for Child Pornography. Google is required to forward the matter to this government agency, and there, regardless of what Google suspects is on its servers, when it tenders the files to the National Center, the National Center conducts a search that is more expansive than Google does, which is a separate Fourth Amendment breach. Why does it matter whether Google sent the 500 directly to Nebraska or sent it there through knick-knack? I don't believe that it does. You just said if they had sent it directly to Nebraska, it would be a radically different situation. I'm trying to understand. Sure. I think that, ostensibly, there are, and I don't want to be overly complex, there are ostensibly six theories of Fourth Amendment violation. And if you were to say that the three actors, if you were making a grid, Google, the National Center, and law enforcement, and then you have a reasonable expectation of privacy and trespass to chattels column, that each of those theories of Fourth Amendment violation have occurred in this case. I believe that Google, acting as a government agent, scanning its files, is in and of itself a Fourth Amendment act that is a warrantless search by a government agent. I believe that knick-knack's review of those files, especially its expansion of Google search, is in and of itself, independent of whether you believe the Google agency theory, is in and of itself a Fourth Amendment act. And lastly, I believe that the government opening those files, opening that private correspondence, those papers and effects, is in and of itself a Fourth Amendment act. So I think it changes which theory you're under if you were to bypass the National Center of Missing and Exploited Children, but it's still, as we are arguing, a Fourth Amendment act to have Google look at those images, and it's a Fourth Amendment act for NCBIP to expand upon that search. What evidence came out of knick-knack's search of additional files that you would ask to be suppressed here? Well, what you have ultimately, Your Honor, is Google submits these files, and then in those cyber tips, you have an entire section that is populated manually by a human analyst. And that includes their own assessment that they have, to quote some of the defense exhibits, what they suspect is new and homemade content described that they have visually confirmed this to involve child pornography. And that information populated manually by an analyst was put into Investigator Albarico's search warrant application, which then yielded the troves of electronic data which ultimately made its way to the Nebraska State Patrol. It is that expansion, that manual review, those assessments that get put into the search warrant application that yield the evidence that is ultimately introduced to Mr. Ringland at trial, including his location. They get the pending warrant with this information, they get the search warrant with this information, and it's the execution of those warrants based upon the information from the Google search and the NCMEC expansion assessment that leads to the execution of those warrants, which is what ultimately is introduced against Mr. Ringland at trial. Well, if we could go back to what I was trying to ask before, and maybe not clearly enough, if we assume for the sake of this discussion for a moment that Google was private, I know that's not your position, but just take that for the sake of analysis here. Why isn't the warrant sufficiently based on the Google searches such that suppression is not warranted even if you're right about NCMEC conducting impermissible searches? If we had a situation where NCMEC merely passed along four hash value matches of what they assert to be child pornography, I don't believe that that's enough to get a warrant to search someone's home. What's contained in the warrant affidavit contains no information about Google's hash value technology, its accuracy, there's nothing in there about it. It's not until NCMEC gets visual human analyst eyes on it and passes it on to the state patrol, or alternatively until the state patrol gets those files, opens them up and puts human eyes on them, that you get probable cause sufficient for the issuance of the search warrants. So you think Google didn't put human eyes on more than four? I don't believe there's evidence that Google... The evidence before the district court, let me just put it that way, the evidence before the district court is in the cyber tips, it goes file by file by file and one of the questions for each file is did the ESP, or the electronic service provider, review the file before uploading it? And the answers available are yes, no, and maybe. And when they say yes, it is unclear to me whether that is a reference to the hash value technology or human eyes being placed on it. Regardless of whether it's the hash value or a Google analyst looking at it, by the time the information reaches the National Center, we have reports saying for apparent child pornography 1,212 uncategorized. Well counsel, what do you do with the finding of fact, Google, I'm quoting, Google viewed 502 of those files. Period. I don't know what viewed means normally, what do you think it means? Sure, I think it's unclear to me, based upon Ms. McGough's declaration, I don't know when Google uses the word viewed or whether when that's put in there, whether that is a reference to they looked at the individual computer file that came out of Mr. Ringland's email, or whether they had a hash value match and relied upon the fact that at some time in the past, a Google reviewer had opened up a file with an identical hash value match. I don't mean to be rude, but that was my first question to you, because the sentence before that says Google identified and reported 1,216 instances, which I think means they met the hash match. If that is one way to read those sentences in conjunction with one another, I don't know. The record is plain that in the cyber tips, which are what ultimately get processed through the National Center, when Google categorizes those images as apparent child pornography, there are four. Whether they manually reviewed more than that, it's unclear from the record. Nobody from Google was called to testify about what actually occurred. Another point of contention, because when you read Ms. McGough's declaration and compare it to her declaration filed at Defense Exhibit 154 from another case, she is able to speak in that case with specificity about individual files, whether they were simply hash value reviewed or whether they were manually reviewed. In this case, no effort by Google was done to do that. They simply assert in Ms. McGough's declaration that we endeavor to review all the files, which is aspirational and inconsistent with what's contained within the actual cyber tips, the actual contemporaneous record being created. I'm getting into a low amount of time, but if possible, I'd like to reserve some of that for rebuttal. You may reserve the balance. Thank you for your argument. Ms. Sorello, we'll hear from you. I lost my picture of Ms. Sorello. Yes, Your Honor. If you can hear me, I lost video of everyone, but I can still hear everyone. Okay, now I can hear you and see you. You may proceed. Thank you. My name is Kelly Sorello, and I represent the United States of America, the appellee in this case. There are many layers to the defendant's argument here, but no matter which layer you decide to peel apart, the result is the same, that there was no Fourth Amendment violation in this case. I think jumping to the issue of whether Google's, the number of images that Google sent, Mr. McWilliams wants to place a lot of weight to these labels of uncategorized versus apparent child pornography. The evidence before the district court, the only evidence in the record is Google's unequivocal assertion that at some point these files were all reviewed. They were reviewed either when the hash value was put into the repository or at the time that the reports were sent. That's consistent with the reports, that some of the images are indicated that they've been viewed at the time that the report is sent, whereas some of them have not. The only evidence Investigator DeShaw testified at the motion to suppress hearing regarding the labels of uncategorized, and he testified that being labeled uncategorized does not indicate that that image is not child pornography. I think that although Mr. McWilliams wants to assert that there were only four images that were child pornography that were forwarded by Google, that's not consistent with the record, and it's also not consistent with common sense, because there would be no reason for Google to submit 30 plus separate cyber tip reports if they were just sending in mass the contents of Mr. Ringland's accounts when they discovered the first image or the first four images. That's simply not what happened here, and as is laid out, it was government's exhibit to the declaration from Ms. McGough. In fact, Google identified these and then began conducting a manual review which went on for the course of several months, and they submitted additional cyber tip reports as they I've waited the two minutes that we're supposed to, but I've got to ask you, how do you read the two sentences? I think they only looked at 502 of them, but the hashtags meant 1216 of them. Right, that's exactly how I read it. 502 were viewed contemporaneously with sending the report, whereas 1216 files were flagged as suspected, or I think the only part that's the affidavit is alleged child pornography or alleged something to that effect. That's the only thing, the only alleged contraband is the only word that the affiant used when she sought her search warrants, but my reading, and I think it's consistent with exhibit two, is that 1216 files were sent by Google as they're flagging as suspected child pornography based on the hash values. 502 were viewed as they were reported. That brings me to my next point, which is that regardless of whether NECMEC viewed anymore, which the only evidence in the record, again, is that they do not view what's not explicitly viewed by Google, regardless of whether they did, first, those images were viewed at one time, and I would urge this court to join the Fifth Circuit in holding that the hash values alone, you're not going to obtain any new information by viewing an image that's already been identified by the hash value because the hash values are such a reliable means of identifying an image, but even beyond that, when Investigator Albarico submitted her applications for search warrants, she simply did not rely on any information from any NECMEC reviewer. She was very specific, although she, as Mr. McWilliams points out in his briefs, she did indicate the total number of files that were attached, and she may have characterized those as apparent or alleged contraband. That's the only reference to NECMEC or to any files beyond the 502, which she's very clear they only viewed some, I only viewed what they did, and she included descriptions based on the ones that she viewed. So regardless of what And it's very unlike the Ackerman case where there was an expansion of the search because the content of the email and the attachments were all viewed by NECMEC for the first time, and then that was the evidence that was used to indict the individual and to perceive it the case. Whereas here we have an investigator relying solely on the images that were viewed by Google, indisputably, in her evidence she's very clear about that, and then going on to perform her own, getting a search warrant, and then reviewing the broader contents of Google and performing her own investigation. So this certainly doesn't fit within the Ackerman issues that Mr. McWilliams addresses. If I may, what about the argument that Stevenson is distinguishable because the record here shows more of a relationship, I guess, between Google and the government? Could you address that? I think that that argument fails completely. I think that, again, it's Exhibit 2, which is the affidavit from the Google representative but also the testimony by the investigator that there was no collaboration between Google and law enforcement in this case. These were entirely separate investigations. They happened to overlap in time. Google is performing a search because similarly to, you know, if a bank submits some kind of acquisition activity and then decides they don't want that bank account to exist and closes the bank account, these are two separate actions. The Google investigation, they conducted a manual review. They wanted to remove all of this material from their platform. They indicated that they have a private business interest. Users don't like to use a site that they consider to be a haven for this type of material. They wanted to remove that, and it takes time because there's a large number, and if you have an individual manually reviewing that, it's going to take time. But separately, the investigator, Albarico, is conducting her own investigation, and I think it's clear that they didn't work together based on the fact that Mr. Ringland's arrest was on September 1st, and on September 5th, Google is sending another batch of cyber tip reports because they've continued their manual review. So, these weren't in conjunction. No one was, and the testimony was clear that no one was requesting, it's also in the affidavit from Google, no one was requesting that Google continue to look at this. Frankly, there would have been no need for law enforcement to ask Google to continue to look since the 502 images was more than sufficient to get a search warrant in which they then requested the contents of his entire Google account and reviewed it all themselves. So, there was no reason for them to ask Google to continue to manually look through this. The fact that they identified these other email addresses that were associated with Mr. Ringland, that, again, was not something that anyone asked them to do, and if you look through, and I think the timeline is laid out pretty clearly in the district court's report, there was at some point before the second search warrants to Douglas County for the two additional emails, the investigator realized after being contacted by South Dakota that there was sort of a separate investigation opened up related to a separate email. So, this was something that kind of all came together through everyone's investigation, but there's just simply nothing in the record to support the assertion that Google escalated in response to law enforcement or at law enforcement's request or in any way in conjunction with law enforcement. Even this court, Mr. McWilliams asked this court to follow what's laid out in Ackerman. In Ackerman, the court also looked first at whether the person performing the search was a government entity, and I do think that that's an important first step, and I think that that's really the first step where this fails is that Google is a private entity versus, I think we don't have to reach the question of NECMEC, certainly NECMEC's a closer call than Google, but in this case, I think that you can stop the consideration really at that first step, which is clearly consistent with Ackerman, which is whether the entity performing the search is a private entity or a government entity, and in this case... Counsel, you don't really argue that NECMEC is not a government entity, do you? I didn't see that in your briefs, but maybe I didn't get it. My position is that we don't have to reach that. I really didn't go into whether, I think there's never been a clear holding as to that, but certainly Ackerman suggests that they found it, and I certainly agree with them that it's a much closer call. There's a lot more involvement with government. Thank you. What do you think is the evidence on what NECMEC did with the images? There seems to be a lot of back and forth about whether they did any searching. Do you think we have a clear finding on that from the district court? The magistrate judge seemed to say no, and then I thought maybe the district court said I don't have to decide. Right. I believe the district court said that NECMEC did not expand the search, but that regardless, the warrant didn't rely on it, and that would also be my position. I think that the evidence established that NECMEC did not expand. The only evidence NECMEC, I'm sorry, the declaration from NECMEC indicated that they do not review what hasn't been previously reviewed. Mr. McWilliams wants to put a lot of weight on these tiny inputs that say something to the effect of I reviewed the images, and therefore that must mean all, and not only the ones that have been indicated as having been specifically reviewed. I don't think that there's a basis for jumping to that conclusion. I think that's inputting information that was not in the record, when the only information in the record is NECMEC saying that they do not review images that haven't been previously reviewed. But again, I agree with the district court that we really don't have to reach that issue because there was simply no reliance on that in the affidavits for search warrants in this case. So it simply had no impact on this case going forward. Okay. Thank you. So at the end, do you stand with the district court's order on that, pages 12, 13, 14? I stand with their order, yes. The district court's view? Correct. I interpreted there as a finding there that they didn't expand it, but I do agree with the district court's view on that, yes. All right. Finally, I think that even if this court were to conclude that Google or NECMEC conducted an improper search, that Google was acting as a government agent or that NECMEC somehow expanded and that that was relied upon, I think that it's also clear that the good faith exception would apply in this case. Investigator Albarico was very careful to include in her applications for search warrants that she had reviewed only what Google had reviewed. She was very specific that Google had not reviewed all. She stated specifically when she received reports where Google had not reviewed them at that time at all and that she didn't review them. I think that the statement of the total number of alleged contraband is certainly insufficient for her to somehow be ignoring what she believed to be controlling law under Stevenson and also in consideration of Ackerman. There was simply no reason for her to believe, after the Stevenson opinion, that Google would be acting as anything other than a private agent in its search and that NECMEC, that she could not expand on Google search. I think that was very clear in her affidavits that that's what she was doing. I think, again, regardless of everything else, the warrants in this case, I think that the conviction and the sentence should stand based on the good faith exception in addition to the other arguments. If there are no further questions, I'll concede my remaining time. Very well. Thank you for your argument. Mr. McWilliams, we'll hear from you in rebuttal. You have about two minutes and five seconds remaining. Yes, Your Honor. I believe to establish the chronology of what happened and when it happened, one has to look at the cyber tips themselves. The blanket declarations by Ms. McGough and Mr. Sheehan about what those entities aspire to do is belied by the actual reports. I'm holding Defense Exhibit 101. It's like a 300 page document. It's long and it's laborious to go through this to pick out and to reconstruct what happened and when it happened, but the executive summary at the front of Defense Exhibit 101 contains what information Google conveyed to the National Center for Missing and Exploited Children. It says, this is a report containing uploaded files that appear to depict apparent child pornography. This is the assessment of the National Center. The report contains over 700 uploaded files. Some of the files are unfamiliar to me. This is again manually populated by the ECD analyst who is making a statement to the effect of there's 700 uploaded files here. Some of them aren't familiar to me. That analyst is not saying I didn't review some of them or I looked at 685 of them. There is a statement being made that those files have now been reviewed by the National Center. On the front page, you probably can't see this, but it has the uploaded file categorizations assigned by the ESP. It says apparent child pornography 4 uncategorized 780. That Google may have later on conducted a manual review months or weeks or years after the warrant had been issued is at this point immaterial. National Center is receiving this information this input, these files from Google which has conducted a cursory hash value review or at a minimum not provided the National Center with the information it needs to conduct its analysis. Nonetheless, they review everything. What NCMEC knows as it's reviewing everything is only what Google's provided it which is we've uploaded these files of these 1,200 some files only 4 of them are apparent child pornography. That expansion, NCMEC's knowledge of that expansion is what's material. The timeline is important and the district court erred by failing to file consistent with that. Thank you for your time. Thank you for your argument. Thank you to both counsel. The case is submitted and the court will file an opinion in due course. We appreciate your accommodating us by appearing through video and you may be excused.